United States District Court
District of New Jersey

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Hon. Mark Falk** |
| | : | |
| v. | : | **Magistrate No. 08-3537** |
| | : | |
| **JOSE LOPEZ,** | : | **CRIMINAL COMPLAINT** |
| **DAVID LOPEZ-CORTEZ and** | : | |
| **JOSE NAVA** | : | |

I, Matthew Maltese, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about February 28, 2008, in Ocean County, in the District of New Jersey and elsewhere, defendants did:

SEE ATTACHMENT A

In violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration and that this complaint is based on the following facts:

SEE ATTACHMENT B.

MATTHEW MALTESE
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

___2/29/08___ at   Newark, New Jersey
Date                         City and State

Honorable Mark Falk
United States Magistrate Judge
Name & Title of Judicial Officer          Signature of Judicial Officer

ATTACHMENT A

knowingly and intentionally conspire and agree with each other and with others to distribute and to possess with intent to distribute 500 grams or more of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

ATTACHMENT B

I, Matthew Maltese, am a Special Agent with the United States Department of Justice Drug Enforcement Administration. Based upon my investigation, information from confidential informants, and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. On or about February 26, 2008, a confidential informant (the "CI") placed a recorded telephone call to Jose Lopez for the purpose of ordering a quantity of cocaine. Jose Lopez instructed the CI to meet with him later that day at a restaurant parking lot in the area of Sayreville, New Jersey, to discuss the details of the narcotics transaction.

2. On February 26, 2008, at approximately 5:30 p.m., under the surveillance of law enforcement officials, the CI met with Jose Lopez and David Lopez-Cortez at the restaurant parking lot and engaged in a recorded conversation. During this conversation, the CI discussed plans to purchase five kilograms of cocaine at a cost of approximately $27,000 (U.S.) per kilogram from Jose Lopez and David Lopez-Cortez.

3. On or about February 28, 2008, under the surveillance of law enforcement officials, the CI met with Jose Lopez and Jose Nava at a convenience store located in or about Brick, New Jersey. During this meeting, the CI, Jose Lopez and Jose Nava further discussed the terms of the contemplated narcotics transaction.

4. On February 28, 2008, at approximately 2:10 p.m., under the surveillance of law enforcement officials, the CI met with Jose Lopez, David Lopez-Cortez and Jose Nava in the parking lot of a car dealership located in or about Lakewood, New Jersey, to complete the previously discussed narcotics transaction. At the time of the meeting, Jose Lopez and Jose Nava were seated in a parked, green full sized cargo van. David Lopez was seated in a silver Acura MDX with temporary registration tags, which was parked in close proximity to the green van. The CI stood outside the green van as Jose Lopez and Jose Nava showed the UC a rectangular shaped object wrapped with black carbon paper and grey tape, which was believed to be cocaine. Law enforcement officials then received a pre-arranged arrest signal from the CI and subsequently apprehended Jose Lopez, David Lopez-Cortez and Jose Nava. The rectangular shaped object wrapped with carbon paper and grey tape was also recovered.

5. The substance seized by law enforcement officials was weighed and field tested positive for cocaine. The weight of the cocaine was approximately 1100 grams.

6. Following his arrest, Jose Lopez gave a voluntary statement to law enforcement officials. Jose Lopez stated, in substance and in part, that he knowingly and willingly met with the CI to conduct a narcotics transaction involving the sale of kilogram quantities of cocaine in exchange for approximately $27,000 (U.S.) per kilogram. Jose Lopez also stated that he expected to be paid a sum of money from Jose Nava for his part in the narcotics transaction. Jose Lopez further stated that he planned to pay his brother, David Lopez-Cortez, a sum of money for his brother's participation in the narcotics transaction.